Catherine Cabalo (SBN 248198)
Khushpreet Mehton (SBN 276827)
PEIFFER WOLF CAR KANE CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3592
Facsimile: (415) 402-0058
ccabalo@peifferwolf.com
kmehton@peifferwolf.com

Irakli Karbelashvili (SBN 302971)
ALLACCESS LAW GROUP
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Aaron M. Clefton (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone: (510) 382-5001
Facsimile: (510) 832-4787
info@reinclefton.com

*Attorneys for Plaintiff*
*Alyssa Ravenwood*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSSA RAVENWOOD,<br><br>    Plaintiff,<br><br>    v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; MILDRED GARCIA, Chancellor of California State University, in her official capacity; TOM JACKSON, JR., President of California State Polytechnic University, Humboldt, in his official capacity; and DOES 1-10,<br><br>    Defendants. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES:**<br><br>1. Violation of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)<br>2. Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) |

Plaintiff, on behalf of herself and all others similarly situated, hereby files this Complaint and alleges as follows:

**INTRODUCTION**

1. Defendants Board of Trustees of the California State University ("Trustees"), the Chancellor of California State University, and the President of California State Polytechnic University, Humboldt provide a variety educational and artistic programs, services, activities, and facilities to the public generally and to students at California State Polytechnic University, Humboldt ("Humboldt"). These include access to the library, speaking events, art exhibits, and undergraduate classes available to matriculated and non-matriculated students.

2. Plaintiff Alyssa Ravenwood ("Plaintiff" or "Ms. Ravenwood") is physically disabled. She requires use of mobility aids and devices, including a wheelchair. She is a student at Humboldt, which is part of the California State University ("CSU") system.

3. Unfortunately for disabled students like Plaintiff and disabled members of the public, the Humboldt campus is replete with architectural and policy barriers that violate the Americans with Disabilities Act. These barriers have denied Plaintiff full and equal enjoyment to her classes as an undergraduate art student. They will also continue to deny her access to a variety of public events, lectures, art exhibitions, the library stacks, and restrooms as a member of the public and alumna on an ongoing basis after graduation.

4. These denials are not happenstance but intentional. Plaintiff and other disabled students have repeatedly complained to Defendants regarding its inaccessible campus buildings, paths of travel, and services, programs, and activities. Despite awareness and actual notice that harm would come to disabled students, including Plaintiff, if Defendants' programs, restrooms, and buildings were not made accessible, Defendants have not remediated the barriers. After several years of documented complaints by Plaintiff and other disabled persons to Humboldt, the campus remains inaccessible to mobility disabled individuals who require a mobility aid or device, such as a wheelchair.

5. According to CSU's 2017 "Fact Book," CSU is the nation's largest four-year public university system, with 23 campuses and eight off-campus centers. According to student statistics covering 2003- 2020 published on CSU's website, CSU had over 1,100 students each year who self-

1
COMPLAINT

identify as having a mobility disability and received services for students with disabilities through CSU.

6. Plaintiff has informed Defendants that she has been forced to navigate around numerous architectural barriers at Humboldt and that such barriers have impeded her ability to access the programs, services, and activities at Humboldt, yet Defendants have failed to remove barriers and make accommodations to ensure Humboldt is accessible to her and other students with mobility disabilities.

7. By failing to remove architectural barriers at Humboldt and failing to make reasonable accommodations for Plaintiff, Defendants are violating basic requirements under federal law.

8. This Complaint seeks declaratory and injunctive relief to remedy Defendants' unlawful policies and practices. Defendants must ensure that architectural barriers at Humboldt be removed so that Plaintiff and other similarly situated individuals who have physical disabilities and require use of a mobility aid or device have appropriate access to campus facilities and areas of Humboldt open to the public.

9. Plaintiff was denied her rights to full and equal access at these facilities, and she was denied her civil rights under federal law. She continues to have her rights denied because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who use wheelchairs.

10. Plaintiff seeks injunctive relief to require Defendants to adopt policies, procedures, practices, and/or training which provide persons with mobility impairments with the accessibility features required under federal laws. Plaintiff also seeks recovery of damages for her discriminatory experiences and intentional denial of access and violation of her civil and constitutionally fundamental right to use the restroom, a denial that is continuing because Defendants fails to provide disabled accessible paths of travel, facilities, and restrooms.

**JURISDICTION**

11. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 for violations of federal law.

//

**VENUE**

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The primary real property which is the subject of this action is in this district, and Plaintiff's causes of action arose in this district.

13. This case should be assigned to the Eureka intradistrict, as the real property which is the subject of this action is in this intradistrict, and Plaintiff's causes of action arose in this intradistrict.

**PARTIES**

14. Plaintiff is a resident of Arcata, California, who lives close to Humboldt. She is a "person with a disability" or "physically handicapped person." Plaintiff has mobility issues caused by complications of necrotizing pancreatitis, which include muscle atrophy and some brain damage. Plaintiff suffers from chronic pain, neuropathy in her feet, which makes walking painful. Plaintiff's disabilities severely limit her ability to ambulate. She often requires the use of a wheelchair or scooter for locomotion.

15. If Plaintiff is forced to exert too much physical activity, for example, to navigate around physical barriers, such strenuous activity exacerbates fatigue, pain and neuropathy in her feet, and general pain throughout her body. Too much physical activity also exacerbates her brain injury-related disabilities.

16. Plaintiff cannot use portions of public facilities that are inaccessible to mobility disabled persons, including those who require the use of a wheelchair. Plaintiff is entitled by permit from the State of California to park any vehicle that she drives or in which she is transported, in a designated and properly configured disabled accessible parking space. Plaintiff requires parking places that are properly accessible, located on an accessible path of travel, and proximate to the public entryways to public facilities that she uses.

17. CSU is a governmental entity that operates public universities throughout California, including Humboldt.

18. Defendant Trustees adopt and oversee the implementation of all policies throughout the entire CSU system, including Humboldt. Those policies include, *inter alia*, policies related to disabled access at Humboldt.

19. At all times relevant to this Complaint, Defendant Trustees was and is the owner, operator, lessor, and lessee of the businesses, properties, facilities and/or portions thereof of all CSU campuses, including Humboldt, which is located at 1 Harpst Street, Arcata, California.

20. Defendant Chancellor Mildred Garcia is the chief executive officer of CSU and has authority and responsibility to take whatever actions are necessary for the appropriate functioning of each CSU campus, which include adopting and overseeing the implementation of all policies at Humboldt. Those policies include, *inter alia*, policies related disabled access at Humboldt.

21. Defendant President Tom Jackson, Jr. is the chief executive officer for Humboldt and has authority and responsibility to take whatever actions are necessary and consistent for the appropriate functioning of Humboldt, which include adopting and overseeing the implementation of all policies for the campus. Those policies include, *inter alia*, policies related to disabled access at Humboldt.

22. Defendants Does 1-3 are public entities subject to Title II of the Americans with Disabilities Act of 1990 ("ADA") who own and/or operate Humboldt and/or own and/or operate the property on which Humboldt was constructed. Defendant Does 4-10 are the employees and/or agents of Defendants Trustees, Chancellor, and/or President.

23. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1-10 are unknown to Plaintiff, who therefore sues said Doe defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to Plaintiff as herein alleged. Plaintiff prays leave of Court to amend this Complaint to show such true names and capacities when the same have been ascertained.

24. Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here

4

within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of here. All actions alleged herein were done with the knowledge, consent, approval, and ratification of each of the Defendants here, including their managing agents, owners, and representatives.

## FACTUAL STATEMENT

25. Plaintiff started her collegiate studies at College of the Redwoods for an Associate in Arts degree. While she was attending College of the Redwoods, she did not encounter any significant accessibility issues, achieved mostly "A" grades, received the "President's Award" for academic excellence most semesters, and graduated with top honors.

26. In contrast, Plaintiff has struggled to complete her Bachelor of Fine Arts degree (BFA) at Humboldt at all. From the moment Plaintiff started classes at Humboldt, she encountered many architectural barriers in buildings that prevented her from accessing classes and necessary facilities, such as restrooms and parking. Plaintiff made numerous requests to several Humboldt representatives—including her professors, the Art Department, the Student Disability Resource Center ("SDRC"), the Dean of Students, Office of the President, and the Ombuds Office—to make reasonable accommodations for her disabilities and to remove architectural barriers preventing her from attending and participating in classes, group art exhibits, and other campus activities that are part of her BFA program and campus life generally. However, none of the people/offices she contacted have removed any of the barriers she has complained of, and each "passes the buck" by referring her to another office. As a result, Plaintiff's grades have suffered. Her health has deteriorated. The effects of her disabilities have been exacerbated by being forced to navigate the inaccessible and dangerous Humboldt campus and by not being reasonably accommodated for her disabilities. To date, she continues to experience daily access issues with physical barriers at Humboldt.

27. Plaintiff generally uses a manual wheelchair. She took out a loan to buy a motorized scooter to try to navigate around the many physical barriers on campus because she would tire too easily and could not access certain classes using her manual wheelchair.

28. As a BFA student, the buildings Plaintiff must access the most are Art A, Art B, Sculpture Lab, Ceramics Lab, Founder's Hall, and the Theater.

29. Plaintiff has experienced difficulty accessing classes in Founders Hall, one of the main academic buildings at Humboldt. Since Founders Hall is located at the top of a large hill, Plaintiff attempted to use transportation through SDRC to access it. But the SDRC van dropped her and other disabled riders off on the north side of the building, even though there is no curb cut to allow wheelchair access to the sidewalk. Furthermore, the north entrance to Founders Hall is accessible only by a set of stairs. The designated accessible entrance to Founders Hall, which includes a ramp, is on the opposite side of the building (south). Plaintiff was forced to wheel herself hundreds of feet, the length of one of the largest buildings on campus, to get to her classes.

30. Plaintiff has also encountered difficulty accessing the Sculpture Lab and Ceramics Lab. The Sculpture Lab has a restroom that is extremely small and cannot accommodate someone who uses a wheelchair because it lacks sufficient turn around space. Plaintiff has been unable to enter the Ceramics Lab in her wheelchair because of steep changes of in elevation, a drain, and cracks in the path of travel to the entrance. Also, inside the Ceramics Lab itself there are similar changes in elevation in the path of travel that make accessing and using the classroom difficult and are tripping hazards. Because Plaintiff can walk very short distances, she has been able to navigate around these barriers at the entrance and inside the classroom to get her wheelchair in the lab, but she cannot enter the Ceramics Lab without getting out of her chair and pushing it over and around the barriers in the path of travel.

31. Art A has only one wheelchair-accessible entrance on the ground floor. The "ramp" to this entrance is cracked and warped as depicted in the following photo:



32. When Plaintiff attempts to traverse this ramp, none of the wheels of her manual wheelchair or scooter touch the ground at the same time, which makes her feel anxious that she will tip over and injure herself. In her manual wheelchair, Plaintiff does not have the physical strength which would be required to push up this ramp. For over a week during Fall 2022 semester, a large tree branch blocked this ramp area—the most direct path of travel for Plaintiff and any wheelchair user to access Art A and the first floor of Art B. The tree branch was not removed despite Plaintiff's complaints to Humboldt representatives.

33. The other entrance to Art A has an automatic door opener but is down a flight of stairs as depicted in the following photo:



34. The only way to access the second floor of Art A is by an elevator that has been inoperable several times. Plaintiff missed class at times because this elevator was not working.

35. There is only one wheelchair accessible parking space by the ramp leading to the accessible entrance to Art A. The next closest accessible parking spaces are in front of Gist Hall, but

there is no accessible path of travel to get from these parking spaces to Art A. If Plaintiff cannot park in the only accessible stall in front of Art A and is forced to park in one of the accessible stalls in front of Gist Hall, to access the designated accessible entrance at Art A, she must wheel up a steep hill or go to the Theater building, take the elevator to the second floor, travel through the courtyard and across to Art A. This route is long and exhausts Plaintiff when she is forced to take this route. Additionally, the Theater elevator has been inoperable several times, and when it is operable, it lurches and feels like it is going to break down. Defendants have failed to ensure the Theater elevator, Art A elevator, and other elevators like them that serve as necessary parts of the accessible path of travel on campus are maintained to be good working order and accessible.

36. Additional accessible parking is located at the Science Building, which is across Laurel Drive from Art A, but there is also no accessible path of travel to access Art A from this parking, as there is no curb ramp to allow Plaintiff in either of her wheelchairs access to the sidewalk, as depicted in the following photo:



37. Additionally, Laurel Drive has a steep decline from Science to Art A (also depicted in the photo above), which is dangerous for Plaintiff to attempt to travel with either her wheelchair or

9

COMPLAINT

scooter.

38. Because of the lack of accessible parking spaces that serve Art A and Art B, Plaintiff has attempted to "share" the accessible parking space in front of Art A with another mobility disabled student in the BFA program as a workaround to allow them both access. However, Humboldt's parking enforcement issued a ticket to the other student for sharing the stall with Plaintiff, despite multiple requests that the ticket be waived because the "violation" was caused by the lack of accessible parking. Plaintiff felt that Humboldt was retaliating against her and the other disabled student for making their best effort to create access to their classes.

39. There is one set of restrooms that serves both the Art A and Art B buildings. This set of restrooms is in Art B, at the top of a steep slope that connects the second floor of Art A with the first floor of Art B. The restrooms are at the top of this slope on the first floor of Art B. The first time Plaintiff tried to go up this slope in her manual wheelchair, her chair tipped over because she experienced severe difficulty going up such a steep incline. She was forced to go up the slope backwards, pushing her wheelchair with her feet to get up the incline. Going down the slope in her wheelchair was very difficult and scary for Plaintiff. She had the brakes on her wheelchair and her feet on the floor to slow down and prevent her from accelerating down the slope at a dangerous speed.

40. After Plaintiff struggles up the slope to reach the restroom in Art B from the second floor of Art A, she experiences additional difficulty accessing the restroom itself. Like many other restrooms at Humboldt, this restroom in Art A has two very heavy doors to get through before reaching the toilet stall area. The first door leads to a small vestibule with storage or a small lounge, and the second door leads to the toilet stalls. There are no electric door openers, and both doors are very heavy and difficult to open. A lack of adequate strike-side clearance and negotiating space also make these doors difficult for Plaintiff to open. Plaintiff has experienced difficulty every time she opens the doors to get to the toilet stalls and again when trying to exit the restroom.

41. There is no wheelchair-accessible path of travel to get from accessible parking into the Art B building. The two closest parking areas to Art B include the one designated accessible space near Art A described above and other designated accessible spaces near the Library. Both require Plaintiff to traverse long, circuitous routes that would not be possible to travel but for her use of a

motorized scooter. Even with her scooter, both routes cause her difficulty. For example, if she parks in the designated parking space in front of Art A, she must travel up the Art A elevator, up the steep slope connecting the second floor of Art A to the first floor of Art B, out the Art B building and over to the Music Building front entrance, go to the back of the building up the elevator to the second floor of the Music Building, then out the Music Building over to second floor of Art B. If she parks in the Library, she must go up the Library roundabout, past the Library, Health Building, Siemens Hall, Nelson Hall East, lower quad, upper quad—all of this uphill—then past the Music Building via the fire lane over to the second floor of Art B. These paths of travel are long and unmanageable, especially for Plaintiff as a disabled fine arts student who often travels with art supplies.

42. The BFA studios, where virtually all of Plaintiff's BFA program does its work, are located on the second floor of Art B. Plaintiff wanted to have the experience of working together with her fellow BFA students in the BFA studios, which is an integral part of the BFA program. Only if she opted to park across campus at the Library and travel a long distance in her scooter (this distance was unmanageable in her manual wheelchair), could she access the BFA studios.

43. Plaintiff made her best efforts to find workarounds to access the second floor of Art B, including using SDRC transportation services to drop her off at the entrance. The SDRC van was forced to obtain the gate code to access the emergency fire lane to drop Plaintiff off in front of the Art B second-floor entrance. This SDRC drop-off option did not allow her to access Art B independently and drew unwanted attention to Plaintiff, particularly when campus police or parking enforcement would "scold" SDRC for using the fire lane. Plaintiff could not rely on SDRC transportation unless she had several days of notice to request transportation from SDRC and knew exactly what times of the day she needed to be dropped off and picked up. These limitations did not allow for any flexibility if she needed to access Art B on short notice or if she did not want to leave at a scheduled time (e.g., if she wanted to stay and chat with professors or other students after classes or work sessions).

44. In the Spring of 2023, the Art Department hosted the BFA Exhibition (the "2023 Exhibition" or "show")—where BFA students display their final works to their peers, professors, and the public—in a private gallery space in Eureka, California, where the art would be installed on a second floor that is inaccessible to wheelchair users. In prior years, the Exhibition was held at Morris

Graves Museum of Art, a venue accessible to people in wheelchairs like Plaintiff. However, the Art Department moved the 2023 Exhibition to the inaccessible location, despite Plaintiff's numerous and repeated complaints over her four years at Humboldt to the Art Department, her professors, and other Humboldt representatives about accessibility issues on campus her need for accessible spaces.

45. When Plaintiff complained to her professors, Lindsay Kessner and Stephen Nachtigall, about the inaccessibility of the 2023 Exhibition, Mr. Nachtigall said the party/reception for the show could be hosted on the first floor of the building. When Plaintiff asked how she could participate in the hanging of art and organization of the show itself if the art would be displayed on the second floor, Ms. Kessner responded that someone could carry a phone so Plaintiff could watch. The replies Plaintiff received from the Art Department confirmed that she, her work, and her participation in the BFA program and final show were less than her non-disabled counterparts. The Art Department made Plaintiff feel that no accessible options were possible or would be considered.

46. Upon finding out the 2023 Exhibition was scheduled to take place at an inaccessible location, SDRC wanted to shut the 2023 Exhibition down entirely. This made Plaintiff feel that she and her efforts to advocate for access to the show would cause her BFA peers to be denied the opportunity to show their work at the much-anticipated final 2023 Exhibition. She felt that she was being retaliated against for advocating for her rights. SDRC told Plaintiff that the decision to shut the show down was because Humboldt was in the middle of litigation in another matter based on disability access issues and that Humboldt did not want to increase its liability in that matter. In the end, the Art Department figured out a way to install all the art pieces on the first floor of Art B. However, by that time, the damage had already been done—the Art Department and Humboldt confirmed that disabled students like Plaintiff have no place at Humboldt and that Humboldt would take action to ensure accessibility only if a lawsuit was filed.

47. In several other instances, Plaintiff encountered other access barriers and was denied reasonable accommodations related to her BFA major. For example, Plaintiff tried working with Humboldt to ensure her classes were in accessible buildings, but many times her requests were not accommodated. Several professors also refused her requests for more time to complete assignments after she suffered from acute health conditions related to being forced to navigate around the many

barriers at Humboldt.

48. Plaintiff was also denied access to other areas of campus. For example, she wanted to attend art exhibits at the Goudi'ni Native American Arts Gallery ("Goudi'ni") and talks hosted in the Behavioral and Social Sciences ("BSS") Building, but unlike non-disabled students, she cannot do so without a vehicle, and even then, only with difficulty. These buildings are located up a hill with an extremely steep slope, and there is no accessible path of travel connecting them with the main campus. One time she missed a meeting for a class with her "Race and Inequality" professor because she could not find accessible parking at BSS where the meeting took place. The main parking lot for BSS does not have any wheelchair accessible parking. Goudi'ni has accessible parking for vehicles with Humboldt parking permits only.

49. Plaintiff is an Arcata resident and intends to remain in Arcata indefinitely after she graduates from Humboldt. Even after graduating from Humboldt, as an alumna she would like to access and participate in events hosted on campus and open to the public, such as shows held at the Theater; lectures and other events hosted on campus[1]; art exhibits at Goudi'ni and the Reese Bullen Gallery; the annual BFA Exhibition; and other art shows that are hosted on campus in the art buildings, including Art A, Art B, the Sculpture Lab, and the Ceramics Lab.

50. Defendants (and their predecessors, for those named in their official capacities), have had actual and constructive notice of the barriers described above and others for several years. Enrolled students, faculty, employees, and members of the general public have informed Defendants (and their predecessors, for those named in their official capacities) of the many barriers to access at Humboldt and asked for the barriers to be removed, but the barriers remain.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF TITLE II OF THE ADA**
**[42 U.S.C. §§ 12101, *et seq*.]**
**(Against All Defendants)**

---

[1] For example, on February 7, 2020, Dr. Cornel West spoke at Humboldt as the keynote speaker of a series of events to celebrate Black Liberation Month. This event and others like it are open to the general public.

COMPLAINT

51. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein by reference as if separately repled.

52. At all times herein mentioned, Plaintiff was entitled to the protections of the "Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by any public entity as defined by 42 U.S.C. section 12131. Plaintiff was at all times relevant herein a qualified individual with a disability for all purposes under the ADA.

53. In violation of Title II of the ADA, Defendants have failed to ensure that individuals with physical disabilities such as the Plaintiff are not excluded from "services, programs and activities" at the subject facilities and property, which include classes and related academic programs for enrolled students and events, lectures, shows, and exhibits hosted on campus and open to the public. Because of Defendants' failure to remove architectural, physical, and policy barriers to access at the subject facilities so as to render them "accessible to and useable by" mobility impaired persons, despite actual notice of the inaccessible conditions, and by its policy decisions as above-described including actions and omissions by any predecessors in interest, Defendants have discriminated against Plaintiff in violation of Title II of the ADA and the regulations adopted to implement the ADA.

54. Despite being on actual and constructive notice of many access barriers at Humboldt, Defendants (and their predecessors, for those named in their official capacities) have taken no action or inadequate action to address and remove the access barriers.

55. As a result of such intentional discrimination, in violation of section 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a), as provided by section 12133 of the ADA.

56. As set forth above, Defendants discriminated against Plaintiff on the basis of her disability by denying Plaintiff meaningful access to the services, programs, activities, benefits, and facilities Defendants offer to other individuals.

57. Plaintiff's injuries are ongoing so long as Defendants do not modify their policies and procedures and provide meaningful access to services, programs, activities, benefits, and facilities at Humboldt to Plaintiff and other persons with similar mobility disabilities.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF SESCTION 504 OF THE REHABILITATION ACT OF 1973**
**[29 U.S.C. § 794]**
**(Against Defendant Trustees and Doe Defendants 1-3)**

58. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

59. At all times relevant to this action, the Section 504 of Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 794, was in full force and effect and applied to the Trustees' and Does 1-3's conduct.

60. At all times relevant to this action, the United States Department of Justice ("DOJ") regulations implementing the Rehabilitation Act were in full force and effect and applied to the Trustees' and Does 1-3's conduct.

61. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of walking and standing within the meaning of the Rehabilitation Act regulations, 45 C.F.R. § 84.3(j). Accordingly, she is a qualified individual with a disability as defined in the Rehabilitation Act. 29 U.S.C. § 705(9).

62. Upon information and belief, at all times relevant to this action, the Trustees' and Does 1-3 received federal financial assistance and were therefore programs or activities receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

63. As recipients of federal funds, Trustees' and Does 1-3 cannot exclude Plaintiff from participation in, deny Plaintiff the benefits of, or subject Plaintiff to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794. Trustees' and Does 1-3 are also required to reasonably accommodate persons with disabilities in their facilities, programs, services, and activities and "afford handicapped persons equal opportunity to obtain the same result, to gain the

15
COMPLAINT

same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

64. As set forth above, the Trustees and Does 1-3 discriminated against Plaintiff on the basis of her disability by denying Plaintiff meaningful access to the services, programs, activities, benefits, and facilities the Trustees and Does 1-3 offer to other individuals.

65. Plaintiffs' injuries are ongoing so long as the Trustees and Does 1-3 do not modify their policies and procedures and provide meaningful access to services, programs, activities, benefits, and facilities at Humboldt to Plaintiff and other persons with similar mobility disabilities.

## **PRAYER FOR RELIEF**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

1. Issue a declaratory judgment that Defendants' conduct has violated, and continues to violate, the ADA (42 U.S.C. § 12101, *et seq.*), Rehab Act (29 U.S.C. § 794), and accompanying regulations;

2. Issue a preliminary and permanent injunction directing Defendants, as current owners, operators, lessors, and/or lessees of the subject premises, and alternatively, as a governmental agencies subject to Title II of the ADA an the Rehab Act, to: (a) modify the above described facilities at the property and other non-conforming facilities and related described facilities and make appropriate policy changes so that Plaintiff and similarly situated persons with disabilities may obtain the benefits of, and access to Defendants' "programs, services and activities" in a "full and equal" manner as required by law; (b) properly *maintain* such accessible facilities and policies once they are provided;

and (c) train their employees and agents in proper sensitivity to and appropriate responses to the needs and rights of Plaintiff and other physically disabled persons and take all reasonable steps to accommodate their needs, including, but not limited to, warning all disabled members of the public of the lack of access they may face if they attempt to visit or obtain public services at any portion of these premises, before such barriers are removed;

3. Order Defendants to alter their systemic policies, procedures, and practices to ensure that Plaintiff receives equal access to the services, programs, activities, benefits, and facilities at Humboldt in compliance with all laws that protect enrolled students and members of the general public;

4. Retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of here no longer occur, and cannot recur;

5. Award to Plaintiff all appropriate damages, including, but not limited to, statutory damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

6. Award to Plaintiff attorney fees, litigation expenses, and costs of this proceeding;

7. Award pre- and post-judgment interest as permitted by law; and

8. Grant any other relief that this Court may deem just and proper.

Date: December 15, 2023                                          PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

   */s/ Catherine Cabalo*
By: CATHERINE CABALO, Esq.
Attorney for Plaintiff
ALYSSA RAVENWOOD

//
//
//
//
//
//
//
//

17

COMPLAINT

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: December 15, 2023

PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

  */s/ Catherine Cabalo*
By: CATHERINE CABALO, Esq.
Attorneys for Plaintiff
ALYSSA RAVENWOOD

COMPLAINT